J-S05016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SHAREAF WILLIAMS | |
| Appellant | No. 1253 MDA 2016 |

Appeal from the Judgment of Sentence March 1, 2016
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001217-2013

BEFORE:  BENDER, P.J.E., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED FEBRUARY 24, 2017**

Appellant, Shareaf Williams, appeals from the judgment of sentence entered after a jury convicted him of several crimes flowing from his attempted sale of heroin to an addict. On appeal, Williams raises two challenges to the sufficiency of the evidence supporting his convictions, and two challenges to the sentence imposed by the trial court. After careful review, we affirm.

In 2013, the Commonwealth charged Williams with one count of possession of heroin with intent to deliver, one count of possession of heroin, one count of criminal use of a communication facility, and one count

_____

[*] Retired Senior Judge assigned to the Superior Court.

of possession of drug paraphernalia. In December 2015, these charges were tried before a jury.

At trial, the Commonwealth presented the following evidence. Brandon Warner testified that he was a heroin addict, and that he called Williams to arrange a purchase of three bags of heroin. *See* N.T., Jury Trial, 12/7/15, at 18; 20-21. Williams directed Warner to meet him at a house at the corner of First and High Streets in Williamsport. *See id.*, at 22. Warner testified that he knew Williams, as he had spoken to him approximately fifteen times in the month prior to that date. *See id.*, at 25-26.

Warner's wife drove him to the specified house, and Warner expected to consummate a street transaction with Williams. *See id.*, at 22-23. Instead, Williams got into Warner's car and directed him to have his wife drive around the block. *See id.*, at 23. Warner's wife began to drive away, but was immediately pulled over by police. *See id.* Warner testified that when questioned by the arresting officer, State Trooper Robert Williamson, he admitted he had a needle in the car. *See id.*, at 25.

Trooper Williamson testified that after questioning Warner and his wife, he believed he had grounds for arresting Warner, his wife, and Williams for attempting to engage in a narcotics transaction. *See id.*, at 37. Williams was searched pursuant to his arrest, and the police discovered three small baggies containing heroin. *See id.*, at 37-38.

Trooper Justin Snyder testified as an expert witness on the habits of drug dealers and addicts. *See id*., at 47-50. Trooper Snyder testified that heroin users usually purchased small amounts of heroin for personal use. "Very rare do you see them buy in bulk." *Id*., at 53. He testified that he believed that Williams possessed the three bags of heroin with the intent to sell them to Warner. *See id*., at 52.

Williams did not present any witnesses, but focused on deficiencies in the Commonwealth's case. For instance, he highlighted the fact that police had failed to confirm whether the phone in Williams's possession when he was arrested had received a call from Warner. *See id*., at 41; 57.

The jury convicted Williams on all charges. After receiving and reviewing a pre-sentence investigation report ("PSI"), the trial court sentenced Williams to an aggregate term of imprisonment of four to eighteen years. Williams filed post-sentence motions challenging the sufficiency and weight of the evidence supporting his convictions, as well as challenges to the discretionary aspects of his sentence. The trial court denied Williams's motions, and this timely appeal followed.

On appeal, Williams raises two challenges to the sufficiency of the evidence at trial, and two challenges to the discretionary aspect of his sentence. We will address Williams's challenges to his conviction, issues number three and four, first.

Issues three and four are both challenges to the sufficiency of the evidence at trial to support the jury's verdict. Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id*. (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. *See id*. "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Bruce*, 916 A.2d at 661 (citation omitted).

In issue three, Williams argues that "the small amount of recovered heroin [in this case] reflects personal use, not product for sale." Appellant's

Brief, at 25. Furthermore, Williams asserts that under the circumstances, it was just as likely that he was purchasing heroin from Warner. *See id*.

Williams's arguments are beside the point. Warner testified that he arranged a transaction to purchase heroin from Williams. Trooper Snyder testified that, in his expert opinion, Warner was purchasing heroin from Williams. The jury was entitled to credit the testimony of both witnesses, and infer that Williams possessed the heroin with the intent to sell it to Warner. William's issue number three merits no relief on appeal.

In his fourth numbered issue, Williams challenges the sufficiency of the evidence supporting his conviction for criminal use of a communication facility. The offense of criminal use of a communication facility is defined as follows.

> A person commits a felony of the third degree if that person uses a communication facility to commit, cause of facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S.A. § 7512. Thus, to support a conviction under Section 7512, the Commonwealth must establish beyond a reasonable doubt that

> (1) Appellant[] knowingly and intentionally used a communication facility; (2) Appellant[] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred … Facilitation has been defined as "any use of a communication facility that makes easier the commission of the underlying felony."

*Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004) (internal citations omitted).

Williams argues that the Commonwealth failed to establish that the transaction occurred, and thus, the Commonwealth could not prove the third *Moss* element. *See* Appellant's Brief, at 26. However, once again, Williams's argument misses the point. We have already concluded that the Commonwealth presented sufficient evidence to establish that Williams committed possession of heroin with the intent to deliver it to Warner. That is the underlying felony, not any actual transaction. The use of cell phones facilitated Williams's intent to deliver the heroin to Warner. As a result, the Commonwealth's evidence was sufficient to support the conviction.

In the alternative, Williams argues that the Commonwealth did not provide text or phone records establishing that Warner and Williams had communicated. While such evidence is certainly more objective than Warner's testimony, Warner's testimony is just as certainly sufficient to support the conviction. If, as the jury was entitled to do, the jury believed Warner's testimony, that was enough to establish that Warner communicated his desire to purchase heroin to Williams over the phone, and that Williams replied by informing Warner where to meet to consummate the transaction. Williams's fourth issue on appeal merits no relief.

Returning to Williams's first two issues on appeal, they are both challenges to the discretionary aspects of the sentence imposed by the trial

court. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **_Commonwealth v. McAfee_**, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). "Two requirements must be met before we will review this challenge on its merits." **_Id_**. (citation omitted).

"First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." **_Id_**. (citation omitted). "Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." **_Id_**. (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." **_Commonwealth v. Tirado_**, 870 A.2d 362, 365 (Pa. Super. 2005) (citation omitted).

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. **_See id_**. "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **_Id_**. (citation omitted); **_see also_** Pa.R.A.P. 2119(f).

In the present case, Williams's appellate brief contains the requisite Rule 2119(f) concise statement. In his statement, Williams asserts that the trial court exhibited bias against him during sentencing. This claim raises a

substantial question. **See Commonwealth v. Williams**, 69 A.3d 735, 744 (Pa. Super. 2013).

Williams's Rule 2119(f) statement does not support his second sentencing claim: That the trial court abused its discretion in imposing an aggravated range sentence on the possession with intent to deliver conviction. Normally, this omission would render the issue waived for appellate review. However, the Commonwealth declined to file a brief in this appeal. It therefore missed its opportunity to object to this defect. In light of the Commonwealth's disinterest in this appeal, we decline to find waiver. **See Commonwealth v. Antidormi**, 84 A.3d 736, 759 (Pa. Super. 2014), **appeal denied**, 95 A.3d 275 (Pa. 2014) (declining to find waiver where Commonwealth did not object to Appellant's failure to comply with Rule 2119(f)).

After reviewing the record, we conclude that neither of Williams's sentencing challenges are meritorious. The sentencing court may have used arguably inartful language when it stated, "I think … there is a special place in hell for [drug dealers] who take advantage of the weakness of others, especially when it comes to an addiction, which is disease, taking advantage of the disease, nature of people [sic]." N.T., Sentencing, 3/1/16, at 13. However, a review of this statement, which we quote verbatim, in context reveals that it was not an indication of personal animus or bias against Williams:

I think what struck me, Mr. Williams, is just the fact that you have so many possession with intent to deliver charges. You started out from a very early age it feels like involved in drugs. The fact that you in your description of how drugs play a part in your life, where you say you don't use, to me that cuts even more against you when you're found with heroin that you are a dealer and we all know because we can't help but read about it in the newspaper, hear about it on the TV or see it on the internet how heroin is decimating our communities, not just Williamsport; but the Commonwealth of Pennsylvania, across the United States, just people dying of heroin right and left. The individuals that sell heroin it's not just heroin any more it's got heroin with something else in it. This last batch of drugs had fentanyl in it, which apparently packed quite a punch because there were a number of people that overdosed not expecting to have such potent heroin. So that – that' s really something that I have to consider, the fact that you did go to trial and although you have the right to protect your record for appeal, the fact that I'm really not seeing a whole lot of remorse. I disagree with the Commonwealth on one thing. Having been in the system for as long as I have been and understanding the generational nature of this business, being involved in the criminal justice system, that sometimes it takes a teacher, a family friend, a member of the clergy, perhaps a parole agent to show an individual involved in the criminal justice system a different way, that it isn't all about fast money, it isn't all about the thrill of trying to beat the cops or getting around the system and so it's on that point that I disagree that maybe, I'm not saying that it's the cure for everything; but maybe that would have changed something in your progression. Maybe not though. Because if you choose to hang around with people who deal drugs you're going to sell drugs. If you choose to hang around people who don't honor the law and respect the law, that's the way you're going to behave. So unless you are willing to really live that change, the best parole agent in the world isn't going to help you because you're never going to – it's never going to stick. I think the fact that you were on supervision in Philadelphia County or just even if you weren't that you were just very recently on supervision and came up here within weeks or months of being incarcerated to continue your business up here, boy, that's certainly not mitigating and I can't think of a better argument for an aggravated range sentence than that. We are what we repeatedly do. I mean I know that's not the full quote from Aristotle, but it sure seems like that when I see people who

– people who steal are thieves. People who deal drugs, drug dealers, you're preying upon the weaknesses of others. I think there is one could argue there is a special place in hell for people who take advantage of the weaknesses others, especially when it comes to an addiction, which is a disease, taking advantage of the disease, nature of people. So being born in Philadelphia and raised in the suburbs this isn't about us and them mentality, this is about us as a community keeping away people who trying to hurt our community regardless of where you're from. You could become – you could be from High Street, you could be from Park Avenue, you could be from wherever, Loyalsock Township in the County of Lycoming it's just this is the kind of behavior that's gotta stop. So Miss Ippolito is correct because this is your at least second conviction for possession with the intent to deliver, your statutory maximum is 30 years. So I could conceivably put your max up that long and that would place you almost as old as I am when you could conceivably be off supervision. That's a long time where if you're not willing to do anything about it it's not going to change your behavior at all. So think that what I'm going to do is I'm going to sentence you consecutively on Counts 1 and 2, so I'm not going to go as high as the Commonwealth is recommending; but I'm going to go to 48 months to 18 years as a total overall sentence.

*Id*., at 11-14. This passage demonstrates that the trial court's "special place in hell" statement was but a small part of a lengthy analysis that also explicitly considered Williams's difficult childhood, among other things. Viewed in this context, we do not believe the trial court exhibited bias or personal animus against Williams.

In his second issue, Williams contends that the trial court abused its discretion in imposing an aggravated range sentence for his possession of heroin with intent to deliver conviction. Given the above quoted passage, we conclude that the trial court's decision to aggravate Williams's sentence was reasonable. The trial court was concerned with the threat Williams posed to

the community, the likelihood that he would soon re-offend when he was released from incarceration, and his need for extensive rehabilitation. These all reasonably militated in favor of an aggravated range sentence. We cannot conclude that this decision was an abuse of the trial court's discretion, and therefore William's final issue on appeal merits no relief.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2017